# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| FASCIA EDWARDS, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> ILLINOIS DEPARTMENT OF FINANCIAL ) <br> AND PROFESSIONAL REGULATION, *et al.*, ) <br> ) <br> Defendants. ) | No. 12 C 00371 <br> Hon. Marvin E. Aspen |

## MEMORANDUM OPINION AND ORDER

MARVIN E. ASPEN, District Court Judge:

Plaintiff Fascia Edwards brings a six-count complaint against Defendants Illinois Department of Financial and Professional Regulation ("IDFPR") and Illinois State Retirement System ("ISRS"). The counts allege violations of Title I of the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* (hereinafter "ADA"); the Age Discrimination in Employment Act, 29 U.S.C. § 623(a) (hereinafter "ADEA"); Title VII of the Civil Rights Act of 1964, as amended 42 U.S.C. § 2000(e) *et seq.* (hereinafter "Title VII"); Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794; retaliatory discharge in violation of the Illinois Workers' Compensation Act; and intentional infliction of emotional distress. Ms. Edwards alleges that Defendants failed to rehire her after she became disabled while employed by Defendants, and that Defendants failed to provide appropriate accommodations. (Compl. ¶¶ 15, 25.) She also claims that Defendants discriminated against her in retaliation for filing worker compensation claims.

Presently before us is Defendants' motion to dismiss Plaintiff's fourth amended complaint. (Dkt. No. 50.) For the reasons discussed below, we grant the motion for all counts

against Defendants ISRS, and for Counts V and VI against IDFPR. We deny the motion for Counts I, III, and IV against IDFPR.

## BACKGROUND

Ms. Edwards was employed with the Illinois Department of Human Services from November 3, 2003, and served there until December 1, 2008, when she was transferred in lieu of layoff to IDFPR. At IDFPR, she served as Executive I until July 9, 2009. (Compl. ¶¶ 12–13.) On June 22, 2009, she suffered a back injury on the job and reported it to her superiors. (Compl. ¶ 15.) Ms. Edwards immediately sought emergency medical attention. (*Id*.) Her doctor concluded she had moderate-to-severe degenerative disk disease. On July 9, 2009, Ms. Edwards took disability leave from work due to her back injury. (*Id.* ¶ 19.) She concluded treatment on March 30, 2013. (*Id*.) She claims that she was medically cleared in June 2010 and was able to return to work, although she was restricted from "stooping, lifting, climbing, bending, kneeling, crouching, crawling, and reaching functions." (*Id.* ¶¶ 17, 21, 31.) She alleges that, despite her clearance to work, IDFPR failed to re-instate her and instead hired other employees. (*Id.* ¶ 32.) On June 4, 2010, Ms. Edwards filed an Application for Adjustment of Claim with the IDFPR Workers Compensation Commission in connection with her workplace injury. (*Id.* ¶ 20.) On June 11, 2011, an Industrial Commission three-judge panel on appeal from IDFPR ruled that Ms. Edwards' job duties caused her to suffer a work-related injury. (*Id*.)

According to Ms. Edwards, IDFPR failed to approach her about re-assigning her to a job that suited her disability. (*Id.* ¶ 21.) Instead, IDFPR offered her a job described within the CMS#104 Office of Legal Affairs, #13851-13-01-500-40-01 as a file clerk. (*Id.* ¶ 23.) She alleges that she was required to perform manual labor and heavy lifting that neither IDFPR advertised, nor Illinois Central Management Services approved. (*Id*.) Moreover, Ms. Edwards

claims that she applied to and was rejected from over 30 jobs, despite being qualified. (*Id.* ¶¶ 24, 29.) Lastly, she pleads that ISRS acted as IDFPR's agent in denying her medical and retirement benefits. (Resp. at 4.) According to Ms. Edwards, not only did IDFPR deny her re-assignment, but they also refused to make reasonable accommodations for her. (Compl. ¶ 25.) Ms. Edwards pleads that on September 29, 2011, the EEOC sent her a right to sue notice, but that it was returned on October 4, 2011. (*Id.* ¶ 7.) In her response, she asserts that she "never received a copy of the Right to Sue letter through the U.S. Postal Service." (Resp. at 5.)

Ms. Edwards claims that IDFPR discriminated against her, harassed her, and retaliated against her for seeking accommodations for her disability. First, Ms. Edwards alleges that IDFPR took retaliatory actions and effectively terminated her employment. (Compl. ¶ 25.) Second, her EEOC Charge Amendment on September 26, 2011 alleges that, since filing the Charge, IDFPR created a hostile work environment. (Resp., Ex. A., Am. EEOC Charge.) She claims that IDFPR threatened her "with physical violence in the work place, subjected [her] to abuse of power by immediate supervisor, and subjected [her] to management keeping a secret diary of 83 pages of false allegations prepared by non-state employees to discredit" her and thereby "creat[ed] a hostile work environment." (*Id.*) Third, her Charge also alleges discrimination based on race and sex. (*Id*; Compl. ¶¶ 44–47.)

Ms. Edwards asks that Defendants make her "whole" and provide her "back pay and reimbursement for lost pension, social security and other benefits and out of pocket-expenses, plus prejudgment interest in an amount to be shown at trial." (Compl. at 8–9.) She also requests that she be reinstated to her former position or a comparable position, that she receive front pay, and that Defendants pay her compensatory damages in the maximum amount allowable by law.

(*Id.*)  She also seeks punitive damages for intentional infliction of emotional distress.  (*Id.*)

Defendants raise a number of arguments in their motion to dismiss, which we address below.

**STANDARD OF REVIEW**

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) is meant to test the sufficiency of the complaint, not to decide the merits of the case.  *Gibson v. City of Chi.*, 910 F.2d 1510, 1520 (7th Cir. 1990).  In evaluating a motion to dismiss, we must accept all well-pleaded allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor.  *Thompson v. Ill. Dep't of Prof'l Regulation*, 300 F.3d 750, 753 (7th Cir. 2002).  A court may grant a motion to dismiss under Rule 12(b)(6) only if a complaint lacks enough facts "to state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949–50 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974 (2007)); *Killingsworth v. HSBC Bank Nev., N.A.*, 507 F.3d 614, 618–19 (7th Cir. 2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949.

Although a facially plausible complaint need not give "detailed factual allegations," it must allege facts sufficient "to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1964–65.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949.  These requirements ensure that the defendant receives "fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1964.

**ANALYSIS**

Consistent with the above principles, we apply a liberal pleading standard. We will first consider the federal claims against ISRS. We will then analyze the federal claims against IDFPR. Finally, we will consider the state law claims against both Defendants.

**A.      Federal Claims against ISRS**

As a threshold matter, we dismiss Ms. Edwards' claims against ISRS under the ADA, ADEA, and Title VII because she does not claim that ISRS was her employer. Title I of the ADA bans an "employer" from discriminating against an employee. 42 U.S.C.S § 12111(2). The federal statutes consider what constitutes an "employer" under equivalent standards. 42 U.S.C § 12111(7) (providing that the term "employer" will be interpreted as having the same meaning as it does under Title VII); *E.E.O.C. v. AIC Sec. Investigations, Ltd.,* 55 F.3d 1276, 1279–80 (7th Cir. 1995) ("The ADA's definition of 'employer' mirrors the definitions of 'employer' in Title VII . . . and in the . . . ADEA."); *Haltek v. Vill. of Park Forest*, 864 F. Supp. 802, 803 (N.D. Ill. 1994) (quoting 29 U.S.C. § 794(d), the Rehabilitation Act, "'[t]he standards used to determine whether this section has been violated in a complaint alleging employment discrimination under this section shall be the standards applied under the [ADA]'"). Without an employer-employee relationship, ADA, ADEA, and Title VII claims fail. *AIC Security Investigations, Ltd.*, 55 F.3d at 1281; *Small v. Chao*, 377 F. Supp. 2d 654, 658 (C.D. Ill. 2003).

Although Ms. Edwards concedes that she was not officially an employee of ISRS, she urges that ISRS should still count as her employer because ISRS acted as IDFPR's agent in issuing medical and retirement benefits. (Resp. at 4.) However, agents are not liable individually; rather, the provision attaches "respondeat superior liability" to the employer for the agent's violations. *AIC Security Investigations, Ltd.*, 55 F.3d at 1281–82; *Patterson v. Xerox*

*Corp.*, 901 F. Supp. 274, 277 (N.D. Ill. 1995). Likewise, agents of a state government can be held liable under the ADA and Title VII, but such liability falls to the government agency that employs her under respondeat superior, and not on the agent individually. *AIC Sec. Investigations, Ltd.*, 55 F.3d at 1281–82.

Because Ms. Edwards is not an employee of ISRS, and agency does not give rise to liability for the agents individually, we dismiss Ms. Edwards' federal employment claims against ISRS.[1]

**B.     Federal Claims against IDFPR**

   **1.  Claims under the ADA and the Rehabilitation Act**

Turning to Ms. Edwards' federal claims against IDFPR, we begin with her ADA and Rehabilitation Act claims. The ADA forbids an employer from "discriminat[ing] against a qualified individual on the basis of disability in regard to . . . terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). Section 504 of the Rehabilitation Act provides that "[n]o otherwise qualified handicapped person shall, solely by reason of his handicap, be subjected to discrimination under any program receiving federal financial assistance." *Alexander v. Choate*, 469 U.S 287, 290, 105 S. Ct. 712, 714 (1985) (quoting 29 U.S.C. § 794).[2] "To prevail on an

---

[1] Although we are dismissing the claims against ISRS for the reasons above, they would not have been barred, as suggested by Defendants, simply because Ms. Edwards did not file the suit within 90 days of the EEOC sending her a right to sue letter. In the Seventh Circuit, if the "plaintiff is at fault for failing to receive the notice earlier, the constructive notice rule applies and 'the 90-day clock starts running once delivery is attempted at the last address provided.'" *Balthazar v. Sw. Bell Corp.*, 494 F. Supp. 2d 930, 933 (N.D. Ill. 2007) (quoting *Reschny v. Elk Grove Plating Co.*, 414 F.3d 821, 823 (7th Cir. 2005) (internal citation omitted)). At the motion to dismiss phase in *Balthazar*, the court held that the plaintiff was not at fault because he pled that his failure to receive the letter was the fault of the post office, rather than his own. 494 F. Supp. 2d at 933. Here, Ms. Edwards similarly pleads that she never received the letter through the Postal Service. (Resp. at 5.)

[2] The analysis with respect to the ADA and the Rehabilitation Act claims are the same, except the Rehabilitation Act requires that the defendant receive federal funds. *Gratzl v. Office of Chief*

ADA claim, the plaintiff must show (1) he is disabled, (2) he is qualified to perform the essential function of the job with or without accommodation, and (3) he suffered an adverse employment action because of his disability." *Horgan v. Simmons*, 704 F. Supp. 2d 814, 818 (N.D. Ill. 2010) (quoting *EEOC v. Lee's Log Cabin*, 546 F.3d 438, 442 (7th Cir. 2008)).  Specifically, Ms. Edwards claims that she was not given "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability" as an employee and that she was denied "employment opportunities."  42 U.S.C. §§ 12112(a) and (b)(5).

    a.    **Disability**

To establish a disability under the ADA a plaintiff first "must show that his condition was a mental or physical impairment that substantially limited one or more of his major life activities." *Abdul-Aziz v. Show Dep't, Inc.*, No. 09 C 7609, 2010 WL 3516157, at *2 (N.D. Ill. Aug. 25, 2010) (citing *Bragdon v. Abbott,* 524 U.S. 624, 631, 118 S. Ct. 2196, 2201 (1998)).  These major life activities include, but are not limited to: "'caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working.'" *Abdul-Aziz*, 2010 WL 3516157, at *2 (quoting *Winsley v. Cook Cty,* 563 F.3d 598, 604 (7th Cir. 2009) (quoting 42 U.S.C. § 12102(2)(A))).

Here, Ms. Edwards pleads that she has a qualified disability because of a musculoskeletal impairment that prevents her from performing manual tasks.  (Compl. ¶ 29.)  She specifically pleads that her injury prevents her from doing manual labor and heavy lifting, which IDFPR required her to do in her most recent position, despite such activity's absence from the job

---

*Judges of 12th, 18th, 19th and 22nd Judicial Circuits*, 601 F.3d 674, 678 (7th Cir. 2010).  Because IDFPR did not argue it did not receive federal funds, however, we merge the analysis of the two statutes.

description. (Compl. ¶ 23.) Because Ms. Edwards adequately pleads a substantial limitation of a major life activity, she satisfies the disability prong.

### b. Qualified Individual

To make out a claim under the ADA, the disabled individual must show under the second prong that "she is otherwise qualified to perform the essential functions of the job with or without reasonable accommodation." *Martinez v. Bitzer Prods. Co.*, No. 11 C 6811, 2012 WL 1409537, at *2 (N.D. Ill. Apr. 23, 2012) (quoting *Stevens v. Ill. Dept. of Transp.*, 210 F.3d 732, 736 (7th Cir. 2000)).

A qualified individual with a disability is "an individual who, with or without reasonable accommodation, [can perform the essential functions of the position] that such individual holds or desires." 42 U.S.C. § 12111(8). Ms. Edwards claims that she was qualified, and at this stage we have no reason to question that claim. (Compl. ¶ 29.) She describes that IDFPR offered her a single job, after she was medically cleared, that forced her to do heavy lifting and manual labor that she could not perform because of her injury. (*Id.* ¶ 23.) She pleads that her job performance at all other times met IDFPR's expectations and that IDFPR rewarded her work over five years. (*Id.* ¶ 14.) She asserts that with reasonable accommodations IDFPR could have returned her to work after June 2010. (*Id.* ¶ 31.) Taken as true, she is qualified for the purposes of withstanding IDFPR's motion to dismiss because she pleads that she is capable of performing the job functions with reasonable accommodation.

### c. Adverse Action Taken Because of Disability

To plead the third prong of an ADA claim, a plaintiff must allege that the employer took an adverse employment action because of the plaintiff's disability. *Abdul-Aziz*, 2010 WL 3516157, at *3; *EEOC v. Supervalu Inc.*, 674 F. Supp. 2d 1007, 1011 (N.D. Ill. 2009). Ms.

Edwards alleges that IDFPR "failed to reinstate and/or rehire Plaintiff because of her disability" by rehiring other non-disabled similar employees. (Compl. ¶ 32.) She also claims that IDFPR denied her re-assignment and refused to make reasonable accommodations for her. (Compl. ¶ 25.) Because Ms. Edwards alleges accompanying facts in support of each element of her claim, we deny IDFPR's motion to dismiss the ADA and Rehabilitation Act claims.

### 2. Race and Sex Discrimination Claims under Title VII

Ms. Edwards brings claims for discrimination based on race and sex, harassment based on race,[3] and retaliation based on race and sex. (Compl. ¶¶ 44–47.) For the reasons set forth below, we deny IDFPR's motion to dismiss all allegations under Title VII.

#### a. Title VII Discrimination

First, we consider Ms. Edwards' discrimination claim. Title VII makes it illegal for employers "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1); *Davis v. Metro Pier & Exposition Auth.*, No. 11 C 9018, 2012 WL 2576356, at *6 (N.D. Ill. July 3, 2012). For Title VII claims to survive a motion to dismiss there are "'two easy clear hurdles . . . : First, the complaint must describe the claim in sufficient detail to give the defendant fair notice of what the claim is and the grounds upon which it rests. Second, the allegations must plausibly suggest that the plaintiff has a right to relief, raising the possibility above the speculative level.'" *Davis*, 2012 WL 2576356, at *7 (quoting *Tamayo v. Blagojevich,* 526 F.3d 1074, 1084 (7th Cir. 2007)); *EEOC v. Concentra Health Servs.,* 496 F.3d

---

[3] In her complaint, Ms. Edwards alleges a hostile work environment based on race. (Compl. ¶ 45.) Because she does not allege harassment based on sex, or provide facts inferring such harassment, we interpret her complaint as alleging harassment based on race only. We disregard any suggestions to the contrary that she included in her response.

9

773, 776 (7th Cir. 2007). In "these types of cases, the complaint merely needs to give the defendant sufficient notice to enable him to begin to investigate and prepare a defense." *Tamayo*, 526 F.3d at 1085 (addressing motion to dismiss where plaintiff's complaint alleged, as included in her EEOC charge, that she was female and that she was paid less than similarly-situated male employees because she was a woman).

In the Seventh Circuit, "a plaintiff alleging employment discrimination on the basis of race, sex or some other factor governed by 42 U.S.C. § 2000e-2 may allege the defendant's intent quite generally." *Supervalu, Inc.,* 674 F. Supp. 2d at 1011; *Concentra*, 496 F.3d at 777. "'I was turned down for a job because of my race' is all a complaint has to say." *Bennett v. Schmidt*, 153 F.3d 516, 518 (7th Cir. 1998). "To avoid dismissal under Rule 12(b)(6), a plaintiff alleging race or sex discrimination needs only to aver that her employer instituted a specific adverse employment action against her on the basis of race and sex." *Davis*, 2012 WL 2576356, at *7.

Ms. Edwards sufficiently pleads that IDFPR discriminated against her "as an individual in the terms, conditions or privileges of employment on the basis of her race and sex." (Compl. ¶ 44.) She alleges that she was fired because of her race and that she was replaced by non-African American and male employees. (Compl. ¶¶ 45–47.) As in *Tamayo*, Ms. Edwards made the same claims in her EEOC charge, and the EEOC gave her permission to sue. Because Ms. Edwards provides adequate notice and articulates the claims in her complaint, her Title VII discrimination claim is not dismissed.

b.   **Title VII: Harassment**

i.   **Exhaustion of Administrative Remedies**

As a preliminary matter, IDFPR argues that we should not let Ms. Edwards proceed with her harassment claim because she "did not raise the allegations concerning harassment with respect to her EEOC Charges alleging age or disability discrimination." (Mem. at 9.)  Claims "alleged in the plaintiff's complaint must be 'like or reasonably related to the EEOC charge' and 'reasonably . . . expected to grow out of an EEOC investigation or charge.'" *Hankins v. Best Buy Co., Inc.*, No. 10 C 4508, 2011 WL 6016233, at *7 (N.D. Ill. Dec. 2, 2011) (quoting *Peters v. Renaissance Hotel Operating Co.*, 307 F.3d 535, 550 (7th Cir. 2002)).

"Claims are deemed reasonably related if there is a factual relationship between them." *Hankins*, 2011 WL 6016233, at *7 (citing *Cheek v. W. & S. Life Ins. Co.,* 31 F.3d 497, 501 (7th Cir. 1994)).  The EEOC charge and the complaint must "describe the same conduct." *Hankins*, 2011 WL 6016233, at *7 (quoting *Cheek*, 31 F.3d at 501).  "The purpose of this rule is to 'afford[ ] the EEOC and the employer an opportunity to settle the dispute through conference, conciliation, and persuasion and [give] the employer some warning of the conduct about which the employee is aggrieved.'" *Hankins*, 2011 WL 6016233, at *7 (quoting *Cheek*, 31 F.3d at 501).

Here, Ms. Edwards discusses her harassment claims extensively in her EEOC charge. She alleges that she has "been threaten[ed] with physical violence in the workplace . . . [and] subjected to management keeping a secret diary of 83 pages of false allegations" against her and that she has been "verbally harassed . . . because [she is] black." (Resp., Ex. A., Am. EEOC Charge.)  Because Ms. Edwards describes harassment in her Charge, she has provided her employer with the "opportunity to settle the dispute . . . and give[n] [her] employer some

11

warning of the conduct about which the employee is aggrieved." *Hankins*, 2011 WL 6016233, at *6 (quoting *Cheek*, 31 F.3d at 501). We conclude that she has exhausted her administrative remedies.

### ii. Stating a Title VII Claim for Harassment

Ms. Edwards alleges that IDFPR created a hostile work environment because of her race. (Compl. ¶ 45.) Title VII prohibits an employer from engaging in racial harassment that creates a hostile or offensive working environment. *Patterson v. McLean Credit Union,* 491 U.S. 164, 180, 109 S. Ct. 2363, 2374 (1989); *Meritor Sav. Bank, FSB v. Vinson,* 477 U.S. 57, 65, 106 S. Ct. 2399, 2404–05 (1986); *Johnson v. City of Fort Wayne, Ind.*, 91 F.3d 922, 938 (7th Cir. 1996); *Daniels v. Essex Group, Inc.*, 937 F.2d 1264, 1270 (7th Cir. 1991). As the Supreme Court recognized in *Meritor*, "Title VII affords employees the right to work in an environment free from discriminatory intimidation, ridicule, and insult." *Meritor*, 477 U.S. at 65, 106 S. Ct. at 2405; *Johnson*, 91 F.3d at 938. "In order to make a claim for hostile work environment . . . harassment, a complaint must allege acts that are 'sufficiently severe or pervasive to make the workplace intolerable for the members of the group discriminated against.'" *Simonsen v. Bd. of Educ. of City of Chi.*, No. 01 C 3081, 2001 WL 1250103, at *6 (N.D. Ill. Oct. 17, 2001) (quoting *Minor v. Ivy Tech. State Coll.,* 174 F.3d 855, 857–58 (7th Cir. 1999)). "[W]e can say that whether an environment is 'hostile' or 'abusive' can be determined only by looking at all the circumstances." *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 23, 114 S. Ct. 367, 371 (1993).

Ms. Edwards satisfies the pleading standard for a Title VII harassment claim. She claims that "IDFPR terminated [her] employment, or failed to reinstate and/or rehire her because of her race in violation of Title VII." (Compl. ¶ 45.) She further alleges that "[t]he violations became so frequent and severe that it created a hostile, retaliatory and offensive working environment

and resulted in adverse employment acts such as threats to her life, demotion and docked wages." (*Id.*) She recalls being threatened with physical violence in the workplace and "subjected to management keeping a secret diary of 83 pages of false allegations," in addition to verbal harassment "because [she is] black." (Resp., Ex. A., Am. EEOC Charge.) Because Ms. Edwards alleges facts supporting this claim with a right to relief above a speculative level, we deny the motion as to her hostile work environment claim.

      **c.**      **Title VII Retaliation**

Ms. Edwards also alleges that IDFPR's discriminatory practices were retaliatory. (Compl. ¶ 45.) Title VII makes it unlawful "for an employer to discriminate against any of his employees or applicants for employment . . . because he has opposed any practice made an unlawful employment practice by [Title VII]." 42 U.S.C. § 2000e–3(a); *Davis*, 2012 WL 2576356, at *6.

In *Tamayo*, the plaintiff adequately pled a claim for retaliation by showing that she had performed her job in a satisfactory manner; that after she complained of her lack of equal pay, her employer subjected her to adverse employment reactions; that she stated these facts in her EEOC Charge; and that she had a right to sue notice. *Tamayo*, 526 F.3d at 1085.

Like in *Tamayo*, here, Ms. Edwards pleads that she is black and female, lost wages, received threats to her life, and was demoted. She explicitly pleads these incidents along with the retaliation violation. In her EEOC Charge Amendment, she specifically reports that after filing the Charge, she was subjected to "different terms and conditions of employment" and "threatened with physical violence in the workplace" and that co-workers kept a diary with "83 pages of false allegations." (Resp., Ex. A., Am. EEOC Charge.) Because Ms. Edwards adequately pleads retaliation, we deny IDFPR's motion to dismiss the claim.

## C. State Law Claims against IDFPR and ISRS

Defendants moved to dismiss Count V, alleging liability for retaliatory discharge, based on the doctrine of sovereign immunity. (Mem. at 12.) Ms. Edwards alleges that IDFPR terminated her because she filed a Workers' Compensation claim against IDFPR. (Compl. ¶¶ 58–61.) Defendants also moved to dismiss Count VI, alleging liability for intentional infliction of emotional distress. Because these are both state law claims against the State of Illinois, we apply the same analysis to both claims.

The doctrine of sovereign immunity bars suits against a state by its own citizens. *Hans v. Louisiana*, 134 U.S. 1, 15, 10 S. Ct. 504, 507 (1890); *Takle v. Univ. of Wis. Hosp. and Clinics Auth.*, 402 F.3d 768, 769 (7th Cir. 2005); *Butler v. Illinois Dep't of Transp.*, 533 F. Supp. 2d 821, 826 (N.D. Ill. 2008). "Federal district courts lack original subject matter jurisdiction over claims barred by the Eleventh Amendment." *Fayemi v. Pucinski*, 155 F. Supp. 2d 944, 948–49 (N.D. Ill. 2001) (citing *Porter v. Illinois*, 36 F.3d 684, 691 (7th Cir. 1994)). "Specifically, the Eleventh Amendment bars federal courts from exercising jurisdiction over actions brought by a citizen against a state, state agency, or state official." *Scott v. O'Grady*, 975 F.2d 366, 369 (7th Cir. 1992). Likewise, under the State Lawsuit Immunity Act, "except as provided in the Illinois Public Labor Relations Act, the Court of Claims Act, the State Officials and Employees Ethics Act, and Section 1.5 of this Act, the State of Illinois shall not be made a defendant or party in any court." 745 ILCS 5/1. Under the State Lawsuit Immunity Act, a state agency is treated as the state. *Kroll v. Bd. of Trs. of the Univ. of Ill.*, 934 F.2d 904, 907 (7th Cir. 1991); *Bottoms v. Illinois Dep't of Human Servs.*, No. 03 C 1881, 2004 WL 1403811, at *3 (N.D. Ill. June 22, 2004).

Although sovereign immunity prevents a state from being a defendant in court, there are two exceptions: "(1) when a state unequivocally waives sovereign immunity and consents to suit, and (2) when Congress unequivocally abrogates the state's immunity by invoking its enforcement powers under the fourteenth amendment." *Butler,* 533 F. Supp. 2d at 826–27 (N.D. Ill. 2008) (citing *Wisconsin v. Ho-Chunk Nation,* 512 F.3d 921, 936 (7th Cir. 2008); *Kroll,* 934 F.2d at 907)). "'A waiver of the [S]tate's sovereign immunity must be clear and unequivocal.'" *Harris v. Illinois,* 753 F. Supp. 2d 734, 741 (N.D. Ill. 2010) (citing *Watkins v. Office of State Appellate Defender,* 2012 IL App (1st) 111756, 976 N.E.2d 387, 394 (Ill. App. Ct. 2012)). Illinois has waived immunity under the Court of Claims Act, which provides that "[t]he Court [of Claims] shall have exclusive jurisdiction to hear and determine [a]ll claims against the State founded upon any law of the State of Illinois." 705 ILCS 505/8(a); *Watkins*, 976 N.E.2d at 394. Also, "[t]he [C]ourt [of Claims] shall have exclusive jurisdiction to hear . . . claims against the State for damages in cases sounding in tort." 705 ILCS 505/8. "Any state law remedy which may be available to plaintiffs must come in a state court action." *Fayemi*, 155 F. Supp. 2d at 948–49. Although the State of Illinois has waived Eleventh Amendment sovereign immunity for actions in tort in the Court of Claims, it has not done so for federal courts. *Feldman v. Ho,* 171 F.3d 494, 498 (7th Cir. 1999).

1. **Retaliatory Discharge**

Although the Illinois Workers' Compensation Act, 820 ILCS 305, "itself does not recognize a cause of action for employees who are fired in retaliation for exercising their rights under the statute, Illinois courts have recognized an implied private action, to 'ensure that the sound public policy underlying the [Act] c[an]not be frustrated by the actions of an employer.'" *Crosby v. Cooper B-Line, Inc.*, 725 F.3d 795, 801 (7th Cir. 2013); *Hinthorn v. Roland's of*

15

*Bloomington, Inc.,* 119 Ill.2d 526, 529, 519 N.E.2d 909, 911 (Ill. 1988). Retaliatory discharge is a tort. *Crosby v. Cooper B-Line, Inc.,* 725 F.3d 795, 797 (7th Cir. 2013).

"The doctrine of sovereign immunity is not waived by a statute authorizing civil liability for employers who discharge an employee in retaliation for a workers' compensation claim." 63 C.J.S. Municipal Corps. § 861. In *Butler*, the court held that a plaintiff could not sue the Illinois Department of Transportation in federal court for retaliatory discharge because of sovereign immunity. 533 F. Supp. 2d at 827.

Likewise, here, the Eleventh Amendment and the State Lawsuit Immunity Act bar Ms. Edwards from suing for retaliatory discharge. She argues that her retaliatory discharge claim also implicates violations under Title VII. However, as *Butler* indicates, she cannot use a federal claim to establish jurisdiction over a state claim barred by sovereign immunity. 533 F. Supp. 2d at 827. Ms. Edwards cites the State Lawsuit Immunity Act that allows plaintiffs to bring claims "under Title VII" in state or federal court. 745 ILCS 5/1.5. She concludes that because the retaliatory discharge claim contains facts that would violate Title VII, she can also bring the retaliatory discharge claim. (Resp. at 13.) The statute she cites does not, however, allow for these state law claims to go forward in federal court simply because she alleges a Title VII claim. On the contrary, the Court of Claims has exclusive jurisdiction over matters in tort against the state. 705 ILCS 505/8.

Consistent with *Butler*, we lack subject matter jurisdiction over Ms. Edwards' retaliatory discharge claim. 533 F. Supp. 2d at 827.

    **2.**    **Intentional Infliction of Emotional Distress**

Like her retaliatory discharge claim, Ms. Edwards cannot bring her intentional infliction of emotional distress ("IIED") tort claim in federal court because sovereign immunity and the

State Lawsuit Immunity Act bar it. Just as in retaliatory discharge claims, lawsuits against the state for damages in tort under an IIED theory must be filed in the Court of Claims. 705 ILCS 505/8.

Ms. Edwards argues in her response that because the damages are anticipated to exceed $100,000, the Court of Claims would not have exclusive jurisdiction. (Resp. at 13.) We disagree with Ms. Edwards' unsupported interpretation of the statute. Although the State Lawsuit Immunity Act generally caps damages in a tort case to $100,000, that limitation has nothing to do with the scope of the Court of Claims' jurisdiction. *See* 705 ILCS 505/8(d); *see Barrett v. Davol, Inc.*, No. 10 C 3426, 2010 WL 4156441, at *3–4 (D.R.I. Oct. 21, 2010) (interpreting the State Lawsuit Immunity Act as not depriving the Court of Claims of its exclusive jurisdiction merely because a plaintiff alleges claim for damages in excess of $100,000). For the reasons discussed above, we dismiss Counts V and VI without prejudice.

## CONCLUSION

As detailed above, Counts I, II, III, and IV against Defendant ISRS are dismissed. Counts V and VI against both Defendants are dismissed, without prejudice, for lack of subject matter jurisdiction. ISRS is thus terminated as a party. IDFPR's motion to dismiss as to Counts I, III, and IV is denied.[4] It is so ordered.

Marvin E. Aspen
United States District Judge

Dated: Chicago, Illinois
March 27, 2014

---

[4] IDFPR did not move to dismiss Count II, which alleges an ADEA claim, as asserted against it. (Mot. at 2 n.2.)

17